J. S33037/19

**NON-PRECEDENTIAL DECISION – SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| IN RE:  ADOPTION OF E.L., A MINOR | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| APPEAL OF:  T.M., FATHER | : | No. 2018 MDA 2018 |

Appeal from the Decree Entered December 3, 2018,
in the Court of Common Pleas of Cumberland County
Orphans' Court Division at Nos. 74 Adoptions 2016,
CP-21-DP-0000034-2014

| | | |
|---|---|---|
| IN THE INTEREST OF E.L., A MINOR | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| APPEAL OF:  T.M., FATHER | : | No. 54 MDA 2019 |

Appeal from the Order Entered December 6, 2018,
in the Court of Common Pleas of Cumberland County
Juvenile Division at No. CP-21-DP-0000034-2014

BEFORE:  LAZARUS, J., OTT, J., AND FORD ELLIOTT, P.J.E.

MEMORANDUM BY FORD ELLIOTT, P.J.E.:            **FILED JULY 11, 2019**

T.M. ("Father") appeals from the December 3, 2018 decree entered in the Court of Common Pleas of Cumberland County, Orphans' Court Division, involuntarily terminating his parental rights to his dependent child, E.L., female child, born in May of 2008 ("Child"), pursuant to the Adoption Act,

23 Pa.C.S.A. §§ 2511(a)(1), (2), (5), and (b).[1]   After careful review, we affirm.

The trial court set forth the following:

> Mother[2] had ceded primary physical custody of [Child] to Father as far back as 2012. Over the years, [Cumberland County Children and Youth Services (the "Agency")] received several referrals regarding Father's heroin use.[Footnote 2]   On February 6, 2014, the Agency became formally involved because of Father's incarceration. He had left [Child] in the care of paternal grandmother. Unfortunately, paternal grandmother was unable to care for [Child] due to her own health issues. [C]hild was declared dependent. She was placed in the legal and physical custody of the Agency which placed her in the foster home of paternal grandfather.  She continued to reside with paternal grandfather until early 2015 when she was transferred to the informal kinship home of her maternal grandparents.  She stayed in that home

---

[1] The record reflects that Father filed a timely notice of appeal of the decree terminating his parental rights to Child at No. 74 Adoptions 2016 which this court docketed at No. 2018 MDA 2018.  Father then filed a timely notice of appeal of the order changing the goal to adoption at CP-21-DP-0000034-2014 which this court docketed at No. 54 MDA 2019.  By order entered February 2, 2019, this court consolidated the appeals **sua sponte** pursuant to Pa.R.A.P. 513.  (**Per curiam** order, 2/8/19.)  In his brief to this court, however, Father does not challenge the goal-change order.

We also note that the trial court appointed separate legal counsel to represent Child's legal interest, as well as a guardian **ad litem** to represent Child's best interest.  **See In re Adoption of L.B.M.**, 161 A.3d 172, 179-180 (Pa. 2017) (plurality) (requiring the appointment of separate legal counsel, in addition to a guardian **ad litem**, in contested involuntary termination proceedings); **see also In re D.L.B.**, 166 A.3d 322, 329 (Pa.Super. 2017) (concluding that "separate representation would be required only if the child's best interests and legal interests were somehow in conflict.")

[2] The record reflects that the trial court granted the biological mother's petition for voluntary termination or relinquishment of parental rights to Child on December 13, 2018.

from February 26, 2015, until March 30, 2015, when she was placed in Mother's care. On May 28, 2015, she was taken from Mother's care and placed back in the home of her maternal grandparents. She remained in the home of her maternal grandparents for nearly two (2) years until she was reunified with Father on February 26, 2017.

> [Footnote 2] Father conceded that he has been battling heroin addiction for many years.

On January 8, 2018, the Agency received a referral that Father had left [Child] at the home of maternal grandparents on December 24, 2017. Father told the maternal grandparents that he and [C]hild were homeless. He was also in the throes of a relapse of his heroin addiction. He never did return for [C]hild.

On February 15, 2018, we held a shelter care hearing for [Child]. She was again placed in the kinship home of her maternal grandparents. She was re-adjudicated dependent on March 19, 2018. Despite being given notice of the adjudicatory hearing, Father did not attend. The Agency lost contact with Father until June of 2018. Father reached out to the Agency through his counselor at an inpatient drug treatment program. The Agency provided the family service and permanency plans to Father. His counselor confirmed that they were received and reviewed.

On July 2, 2018, through his counselor, Father requested visitation with [Child]. The Agency referred him to ABC.[Footnote 7] ABC attempted to arrange visitation but was unsuccessful due to Father's lack of follow-through. On August 24, 2018, the Agency filed a Petition to Terminate Father's Parental Rights. At that point, Father had neither seen nor contacted his daughter since December 24, 2017. We held an evidentiary hearing on November 20, 2018.

> [Footnote 7] ABC is a local provider that assists the Agency with a multitude of parenting services.

- 3 -

Trial court opinion, 3/11/19 at 1 to 2 (footnotes containing citations to notes of testimony omitted).

The record reflects that following entry of the termination decree, Father filed a timely notice of appeal, together with a concise statement of errors complained of on appeal pursuant to Pa.R.A.P. 1925(a)(2)(i). The trial court then filed its Rule 1925(a)(2)(ii) opinion.

Father raises the following issues for our review:

[1.] Does the record support the [trial] court's finding by clear and convincing evidence that Father's progress was 'minimal' and the conditions and causes of the incapacity, abuse, neglect or refusal cannot or will not be remedied by the Father under [Section] 2511[(a)](2)?

[2.] Does the record support the [trial] court's finding by clear and convincing evidence that the conditions which led to the removal or placement of [C]hild continue to exist and that Father cannot or will not remedy those conditions within a reasonable period of time under [Section] 2511[(a)](5)?

[3.] Does the record support the [trial] court's finding that severing the bond between Father and the minor child would not have any detrimental effect on [C]hild where [C]hild asked to see Father, greeted him with a loving embrace and where no bonding study was ordered or considered?

[4.] Did the court error [sic] as a matter of law and/or abuse its discretion in terminating Father's parental rights on the basis that Father was not fully compliant with the parenting plan while he was receiving in patient [sic] medical

care for mental health and addiction disorders under [Section] 2511(b)?

[5.] Did the court error [sic] as a matter of law and/or abuse its discretion in suggesting to [the Agency] that they should amend the Petition to add subsection (1) to the Petition during Father's closing argument and without affording an opportunity to respond or re-open evidence thereby denying Father his Due Process rights?

Father's brief at 4.

In matters involving involuntary termination of parental rights, our standard of review is as follows:

> The standard of review in termination of parental rights cases requires appellate courts "to accept the findings of fact and credibility determinations of the trial court if they are supported by the record." ***In re Adoption of S.P.***, 47 A.3d 817, 826 (Pa. 2012). "If the factual findings are supported, appellate courts review to determine if the trial court made an error of law or abused its discretion." ***Id.*** "[A] decision may be reversed for an abuse of discretion only upon demonstration of manifest unreasonableness, partiality, prejudice, bias, or ill-will." ***Id.*** The trial court's decision, however, should not be reversed merely because the record would support a different result. ***Id.*** at 827. We have previously emphasized our deference to trial courts that often have first-hand observations of the parties spanning multiple hearings. ***See In re R.J.T.***, 9 A.3d [1179, 1190 (Pa. 2010)].

***In re T.S.M.***, 71 A.3d 251, 267 (Pa. 2013). "The trial court is free to believe all, part, or none of the evidence presented and is likewise free to make all credibility determinations and resolve conflicts in the evidence." ***In re M.G.***, 855 A.2d 68, 73-74 (Pa.Super. 2004) (citation omitted). "[I]f competent

evidence supports the trial court's findings, we will affirm even if the record could also support the opposite result." ***In re Adoption of T.B.B.***, 835 A.2d 387, 394 (Pa.Super. 2003) (citation omitted).

The termination of parental rights is guided by Section 2511 of the Adoption Act, 23 Pa.C.S.A. §§ 2101-2938, which requires a bifurcated analysis of the grounds for termination followed by the needs and welfare of the child.

> Our case law has made clear that under Section 2511, the court must engage in a bifurcated process prior to terminating parental rights. Initially, the focus is on the conduct of the parent. The party seeking termination must prove by clear and convincing evidence that the parent's conduct satisfies the statutory grounds for termination delineated in Section 2511(a). Only if the court determines that the parent's conduct warrants termination of his or her parental rights does the court engage in the second part of the analysis pursuant to Section 2511(b): determination of the needs and welfare of the child under the standard of best interests of the child. One major aspect of the needs and welfare analysis concerns the nature and status of the emotional bond between parent and child, with close attention paid to the effect on the child of permanently severing any such bond.

***In re L.M.***, 923 A.2d 505, 511 (Pa.Super. 2007) (citations omitted). We have defined clear and convincing evidence as that which is so "clear, direct, weighty and convincing as to enable the trier of fact to come to a clear conviction, without hesitance, of the truth of the precise facts in issue." ***In re C.S.***, 761 A.2d 1197, 1201 (Pa.Super. 2000) (***en banc***), quoting ***Matter of Adoption of Charles E.D.M. II***, 708 A.2d 88, 91 (Pa. 1998).

In this case, the trial court terminated Father's parental rights pursuant to Sections 2511(a)(1),[3] (2), and (5), as well as (b). We have long held that, in order to affirm a termination of parental rights, we need only agree with the trial court as to any one subsection of Section 2511(a), as well as Section 2511(b). *In re B.L.W.*, 843 A.2d 380, 384 (Pa.Super. 2004) (*en banc*). Here, we analyze the termination decree pursuant to Subsections 2511(a)(2) and (b), which provide as follows:

> **(a)** **General rule.--**The rights of a parent in regard to a child may be terminated after a petition filed on any of the following grounds:
>
> . . . .
>
> (2) The repeated and continued incapacity, abuse, neglect or refusal of the parent has caused the child to be without essential parental care, control or subsistence necessary for his physical or mental

---

[3] We note that in his fifth issue on appeal, Father contends that the trial court abused its discretion when, during the termination hearing, it permitted the Agency to amend the termination petition to include Section 2511(a)(1) as a ground for termination. (Father's brief at 28-30.) The record reflects that when the Agency made the oral motion to amend, Father failed to place an objection on the record. (Notes of testimony, 11/30/18 at 140.) Consequently, Father waives this claim on appeal. *See* Pa.R.A.P. 302 (stating that "[i]ssues not raised in the lower court are waived and cannot be raise for the first time on appeal").

We further note that even if Father did not waive this issue on appeal for failure to raise it with the trial court, we need only agree with the trial court as to any one subsection of Section 2511(a), as well as Section 2511(b), to affirm an order terminating parental rights. *In re B.L.W.*, 843 A.2d at 384. Because we determined that the trial court properly terminated Father's parental rights pursuant to Section 2511(a)(2), Father's argument with respect to Section 2511(a)(1) would be moot.

> well-being and the conditions and causes of the incapacity, abuse, neglect or refusal cannot or will not be remedied by the parent.
>
> **(b) Other considerations.--**The court in terminating the rights of a parent shall give primary consideration to the developmental, physical and emotional needs and welfare of the child. The rights of a parent shall not be terminated solely on the basis of environmental factors such as inadequate housing, furnishings, income, clothing and medical care if found to be beyond the control of the parent. With respect to any petition filed pursuant to subsection (a)(1), (6) or (8), the court shall not consider any efforts by the parent to remedy the conditions described therein which are first initiated subsequent to the giving of notice of the filing of the petition.

23 Pa.C.S.A. § 2511(a)(2), (b).

We first address whether the trial court abused its discretion by terminating Father's parental rights pursuant to Section 2511(a)(2).

> In order to terminate parental rights pursuant to 23 Pa.C.S.A. § 2511(a)(2), the following three elements must be met: (1) repeated and continued incapacity, abuse, neglect or refusal; (2) such incapacity, abuse, neglect or refusal has caused the child to be without essential parental care, control or subsistence necessary for his physical or mental well-being; and (3) the causes of the incapacity, abuse, neglect or refusal cannot or will not be remedied.

*In re Adoption of M.E.P.*, 825 A.2d 1266, 1272 (Pa.Super. 2003) (citation omitted). "The grounds for termination due to parental incapacity that cannot be remedied are not limited to affirmative misconduct. To the contrary, those

grounds may include acts of refusal as well as incapacity to perform parental duties." ***In re Adoption of C.D.R.***, 111 A.3d 1212, 1216 (Pa.Super. 2015), quoting ***In re A.L.D.***, 797 A.2d 326, 337 (Pa.Super. 2002). "Parents are required to make diligent efforts towards the reasonably prompt assumption of full parental responsibilities. . . . [A] parent's vow to cooperate, after a long period of uncooperativeness regarding the necessity or availability of services, may properly be rejected as untimely or disingenuous." ***In re A.L.D.***, 797 A.2d at 340 (internal quotation marks and citations omitted).

Here, in terminating Father's parental rights, the trial court emphasized that:

> [t]he main basis for the termination of Father's parental rights was his lengthy history of heroin addiction. The record shows that his duties to [Child] took a back seat to his drug use. His drug use prevented reunification during [Child's] current and previous time in placement. It caused Father and [Child] to become homeless in December, 2018. It caused Father to leave [Child] in the care of others. His drug use, historically, has caused instability and unrest for the majority of [C]hild's life. His demons have delayed her permanency. And, sadly, at the time of the termination hearing, he still had not demonstrated any real progress on addressing his drug addiction outside of a controlled environment. Not only had he failed to follow through on outpatient counseling, he was slow to begin the drug testing program requested by the Agency. Once he began, he missed numerous drug tests and call-ins within the first 15 days.
>
> Furthermore, he failed to keep in contact with [Child]. He had not had any contact or communication with her for almost a year. While he had made an attempt to contact the Agency to set up visits, he did not follow

through. His participation in an inpatient drug treatment program may partially explain his failure to follow through with visitation, but it does not provide an excuse for his total lack of communication with his child.

[Child] was without essential parental care for almost four-and-one-half years at the time of the hearing. Father's addiction is the source of his repeated and continued parental incapacity, and his current situation was a foreseeable consequence of his inability to lead a life free from illegal drugs. He has been in and out of [Child's] life during his times of incarceration, rehab and homelessness, all stemming from his drug addiction. He may be attempting to battle his addiction at the moment but he still has a long way to go in his recovery. His inability to follow through with his drug testing (and outpatient counseling) demonstrates this problem. Thus, we found that Father's drug-related issues continued to impact [Chlid] and precluded him from providing essential parental care, control or subsistence necessary for her physical and mental well-being.

Whether Father's failure to provide parental care is the result of true incapacity or is simply his refusal, differentiating is not important; the result is the same—[Child] is without essential parental care. Taking into consideration the already lengthy history here, this problem was not likely to be remedied in time to align with the needs and welfare of [Child]. She needs and deserves stability and permanency, which Father was unable or unwilling to provide at the time of the hearing. A child's permanency cannot be put off indefinitely in the hope that a parent might one day be able to carry out his duties.

Trial court opinion, 3/11/19 at 5-7 (citation omitted).

Here, in his brief to this court, Father rehashes the termination hearing testimony in an attempt to persuade this court to reach a different result. We are, however, required to accept the trial court's findings of fact and credibility

determinations when supported by the record. *In re T.S.M.*, 71 A.3d at 267.

Here, our review of the record compels the conclusion that it supports the trial

court's factual findings and that the trial court did not abuse its discretion in

terminating Father's parental rights under Section 2511(a)(2). The record

demonstrates that the conditions that existed upon removal establish

repeated and continued incapacity, abuse, neglect, or refusal of Father that

caused Child to be without essential parental care, control, or subsistence

necessary for his physical or mental well-being. The record also supports the

trial court's conclusion that Father continued to lack capacity to parent Child.

We now turn to whether termination was proper under Section 2511(b).

As to that section, our supreme court has stated as follows:

> [I]f the grounds for termination under subsection (a)
> are met, a court "shall give primary consideration to
> the developmental, physical and emotional needs and
> welfare of the child." 23 Pa.C.S.[A.] § 2511(b). The
> emotional needs and welfare of the child have been
> properly interpreted to include "[i]ntangibles such as
> love, comfort, security, and stability." *In re K.M.*, 53
> A.3d 781, 791 (Pa.Super. 2012). In *In re E.M.*, 620
> A.2d [481, 485 (Pa. 1993)], this Court held that the
> determination of the child's "needs and welfare"
> requires consideration of the emotional bonds
> between the parent and child. The "utmost attention"
> should be paid to discerning the effect on the child of
> permanently severing the parental bond. *In re K.M.*,
> 53 A.3d at 791. However, as discussed below,
> evaluation of a child's bonds is not always an easy
> task.

*In re T.S.M.*, 71 A.3d at 267. "In cases where there is no evidence of any

bond between the parent and child, it is reasonable to infer that no bond

exists. The extent of any bond analysis, therefore, necessarily depends on the circumstances of the particular case." ***In re K.Z.S.***, 946 A.2d 753, 762-763 (Pa.Super. 2008) (citation omitted).

When evaluating a parental bond, "the court is not required to use expert testimony. Social workers and caseworkers can offer evaluations as well. Additionally, Section 2511(b) does not require a formal bonding evaluation." ***In re Z.P.***, 994 A.2d at 1121 (internal citations omitted).

Moreover,

> While a parent's emotional bond with his or her child is a major aspect of the subsection 2511(b) best-interest analysis, it is nonetheless only one of many factors to be considered by the court when determining what is in the best interest of the child.
>
> > [I]n addition to a bond examination, the trial court can equally emphasize the safety needs of the child, and should also consider the intangibles, such as the love, comfort, security, and stability the child might have with the foster parent. . . .

***In re Adoption of C.D.R.***, 111 A.3d at 1219, quoting ***In re N.A.M.***, 33 A.3d 95, 103 (Pa.Super. 2011) (quotation marks and citations omitted).

Our supreme court has stated that, "[c]ommon sense dictates that courts considering termination must also consider whether the children are in a pre-adoptive home and whether they have a bond with their foster parents." ***T.S.M.***, 71 A.3d at 268. The court directed that, in weighing the bond considerations pursuant to Section 2511(b), "courts must keep the ticking clock of childhood ever in mind." ***Id.*** at 269. The ***T.S.M.*** court observed,

"[c]hildren are young for a scant number of years, and we have an obligation to see to their healthy development quickly. When courts fail, the result, all too often, is catastrophically maladjusted children." ***Id.***

In determining that termination of Father's parental rights favored Child's needs and welfare, the trial court:

> found little to no evidence that severing the ties between Father and [Child] would have any detrimental effect on [C]hild. She even expressed concern to her therapist about possibly returning to his care. Prior to her testimony in chambers, she had consistently told her therapist that she did not want to live or visit with her Father. Furthermore, we were satisfied that if there would be any adverse effect, it could be easily overcome by the love and support of [Child's] maternal grandparents. She is thriving in the foster home of her maternal grandparents. They love her and want to adopt her.[Footnote 13] Her life with Father had been hard and unpredictable. With her maternal grandparents, she has love, stability, and permanency. Consequently, we were satisfied that the needs and welfare of [Child] would be best served by terminating Father's parental rights and allowing her to be adopted.
>
> > [Footnote 13] Both maternal and paternal grandparents want to adopt [Child]. Mother consented to the termination of her rights with her parents being her preference for the adoption. [Child] also prefers her maternal grandparents as evidenced by her choice to not honor her paternal grandparents' request for visitation and to not request any such visitation herself.

Trial court opinion, 3/11/19 at 7 (footnotes containing citations to notes of testimony omitted).

In his brief, Father rehashes select portions of the record in an effort to persuade this court to reach a different result. The record, however, supports the trial court's factual findings, and its legal conclusion that termination of Father's parental rights is in Child's best interest was not the result of an error of law or an abuse of discretion.

Based upon our thorough review of the record, we find no abuse of discretion and conclude that the trial court appropriately terminated Father's parental rights under Sections 2511(a)(2) and (b).

Decree affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 07/11/2019